**J. CHAD MOORE, ESQUIRE**
PA76660
270 Market Street
Millersburg, PA  17061
Telephone:  717-692-5533
Fax:  717-692-5111
E-mail:  jcmesquire@mac.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Dixie Keller, on behalf of herself and all others similarly situated, )<br>)<br>Plaintiff ) | Civil Action No.: |
| ) | **CLASS ACTION COMPLAINT** |
| ) | |
| v. ) | |
| ) | |
| MENU FOODS LIMITED; MENU FOODS INC.; MENU FOODS MIDWEST CORPORATION; MENU FOODS INCOME FUND; MENU FOODS SOUTH DAKOTA, INC.; MENU FOODS HOLDINGS, INC. and DOES 1-100, )<br>)<br>)<br>)<br>)<br>)<br>) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. )<br>_____) | |

## CLASS ACTION COMPLAINT

Plaintiff Dixie Keller ("Plaintiff"), individually and on behalf of all other similarly situated, files this Class Action Complaint against Defendants Menu Foods, Inc.., a New Jersey Corporation, Menu Foods Income Fund, a foreign trust, and its affiliated entities (collectively "Defendants"). Plaintiff alleges the following based on personal knowledge with respect to her own experiences and otherwise base on information and belief.

1.      Plaintiff brings this class action on behalf of herself and as a representative of a class of persons consisting of all persons in the United States who purchased contaminated pet food products produced, manufactured, and/or distributed by Defendants that caused injury, sickness, and/or death to Plaintiff's household pet and those of other pet owners across the nation (the "Products").

2.      Defendants are a leading manufacturer of pet food products sold by wholesale and retail outlets nationwide and hold themselves out to consumers as manufacturing safe, nutritious and high quality dog and cat food.

3.      Defendants developed, manufactured, marketed, advertised and warranted their Products as free of defects and safe and fit for their intended purpose as household pet food. Defendants intentionally placed the Products into the stream of commerce to be sold to Plaintiff and other pet owners in Pennsylvania and throughout the United States.

4.      Since at least February 20, 2007, Defendants knew or should have known that their Products were causing illness and/or death to dogs and cats who were eating their products. Defendants delayed issuing a recall until March 16, 2007 when it biggest institutional customer initiated its own recall of defendants products. The contaminating agent is currently identified as melamine - a chemical used to make certain plastics and fertilizers.

5. As a result of Defendant's negligent manufacture of the Products and delay in warning affected pet owners, Plaintiff and members of the Class have unnecessarily suffered damages in the form of veterinary and burial expenses, loss of pets, and the purchase price of the Products, which Plaintiff and Class members would never have purchased had they known of the Products' defects.

6. Defendants have admitted that certain of their products manufactured between December 3, 2006 and March 6, 2007 are defective and have caused and continue to cause severe injury, illness and death in household pets.

PARTIES

7. Plaintiff is a resident of Fairfield, Pennsylvania. Plaintiff purchased the recalled Iams product and fed them to her cat, resulting in the sickness and death of her cat. Plaintiff, individually and as a representative of a Class of similarly situation persons (defined below), brings suit against the named Defendants for offering for sale and selling to Plaintiff and members of the Class the Products in a defective condition and thereby causing damages to Plaintiff and members of the Class.

8. Defendant Menu Foods Income Fund is an unincorporated open-ended trust established under the laws of the Province of Ontario with its principal place of business in Ontario, Canada. The Income Fund controls, directly or indirectly, the other Defendants engaged in the manufacture and distribution of pet food products, including the Products.

9. Defendant Menu Foods Midwest Corp. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the products.

10. Defendant Menu Foods South Dakota, Inc. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

11. Defendant Menu Foods Holdings, Inc. is a Delaware corporation affiliated with the other Defendants and involved in their activities relating to the Products.

12. Defendant Menu Foods, Inc. is a New Jersey corporation affiliated with the other Defendants and involved in their activities relating to the Products.

13. Defendant Menu Foods Limited manufactures and sells wet pet food products to retail customers and brand owners in North America. MFL owns the Kansas and New Jersey manufacturing plants that produced the Products now subject to recall. It is affiliated with the other Defendants and involved in their activities relating to the Products.

14. Plaintiff is not aware of the true names and capacities of defendants sued as DOES 1-100, inclusive, and therefore sues them by such fictitious names. Plaintiff will amend this Complaint to add the true names and capacities of the DOE defendants once they are discovered. Each of the DOE defendants is legally responsible in some manner for the unlawful acts alleged in this Complaint. Some or all DOE defendants are controlled by, control, or have a common nucleus of control with one or more specifically named defendants in such a manner as to justify disregarding the separateness of said entities or individuals from one another. Some or all DOE defendants are entities or individuals, who function as agents or co-conspirators of specifically named defendants, and other defendants, including DOE defendants, facilitating the ability of one another to perpetrate the wrongs alleged herein.

## JURISDICTION AND VENUE

15. The Court has original jurisdiction over this complaint pursuant to 28 U.S.C. Section 1332(d) and the Class Action Fairness Act of 2005, Publ. L. 109-2 (Feb. 18, 2005); and over supplemental state law claims pursuant to 28 U.S.C. Section 1367.

16. Venue is proper in this district since Defendants transacted business in this district, and the conduct complained of occurred in this district, as well as elsewhere in Pennsylvania. Venue is further proper in this district under, *inter alia*, 28 U.S.C. Section 1391 and/or Publ. L. 109-2.

## FACTS

17. Plaintiff Dixie Keller purchased pouches pouches of Iams wet cat food including an "Iams Select Variety Pack" from a local retailer for her otherwise healthy cat, Annie Muffin.

18. Plaintiff fed the Product to her cat on an ongoing basis with no reason to suspect that the it contained a toxic chemical, because she believed in the name and quality of the Product. Ms. Keller's cat began showing signs of renal failure within a few short days after eating the product and ultimately died on March, 21, 2007 after suffering horribly as a result of consuming Defendant's Product.

19. Defendants delayed informing the public about problems with their Products despite receiving complaints about sick and dying dogs and cats by at least February 20, 2007 and identifying as early as March 6, 2007 that the likely source of contamination was wheat gluten from a new supplier.

20. On March 16, 2007, nearly a month after receiving consumer complaints, Defendants initiated a recall of 60 million cans and pouches of "cuts and gravy" style dog and cat food manufactured at Defendants' Kansas and New Jersey facilities between December 3, 2006 and march 6, 2007.

21. Rather than timely warning the public about the suspected, and later confirmed, dangers of the Products, Defendants delayed announcing the recall to minimize the financial fallout from the contamination. Defendants had no choice but to issue a recall on March 13, 2007 because Defendants' biggest customer had initiated its own recall of Defendants' products.

22. Defendants knew about serious problems from consumer complaints no later than February 20, 2007 and they began an internal investigation by February 27, 2007. By March 6, 2007 Defendants were able to determine a particular new supplier of wheat gluten as the likely source of the contamination, and tried to correct the problem before announcing a recall in order to limit the temporal scope of the recall. Even after March 6, Defendants continued to maintain their silence, as they, according to their own later announcement, conducted a "substantial batter of technical tests, conducted by both internal and external specialists."

23. Defendants' delay in disclosing vital information concerning the Products is in direct contrast to their own published Code of Ethical Conduct ("Code"), which touts that they are "committed to full and honest communications with [their] customers about [their] products and services." Defendants further acknowledge in their Code that, as a pet food company, their customers have "trust in us" and that "their trust must be justified."

24. Defendants, directly or through actual or ostensible agents and/or co-conspirators, have implicitly and explicitly represented that the Products are fit for consumption by pets and will not result in the death and serious illness of pets who consume the Products.

25. Defendants have also made representations, including on product labeling and in marketing and promotional materials, concerning the quality of their Products, including explicit and implicit representations that the Products are

suitable for consumption by pets. Defendants ultimately make billions of dollars a year from companies who sell Menu Foods at the retail level. Accordingly, they keep themselves apprised of the advertising, promotions, marketing and claims that are made on behalf of Menu Foods' products. Defendants undoubtedly coordinate with the companies who brand their products at the retail level about the products' safety and quality, including the Products.

## CLASS ACTION ALLEGATIONS

26.   Plaintiff brings this action on her own behalf and as a Class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

All persons in the United States who purchased, or incurred damages by using, pet food produced or manufactured by Defendants that was or will be recalled by Defendants, including that produced from December 3, 2006 up to and including March 6, 2007.

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Courts spouse, all persons within the third degree of relationship to the Court and its spouse and the spouses of all such persons.

27.   The Class is composed of thousands of persons throughout the country, and is sufficiently numerous for class treatment. The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

28. Plaintiff's claims are typical of the the claims of the Class, and Plaintiff has no interests adverse to the interests of other members of the Class.

29. There are questions of law and fact common to all Class members that predominate over questions affecting any individual members, including the following:

(a) Whether Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

(b) Whether Defendants' representations, omissions, and conduct regarding the Products were misleading or false;

(c) Whether Defendants' representations and conduct were likely to deceive consumers into believing that the Products were safe for the purpose for which they were sold;

(d) When Defendants knew or should have known the Products were poisoning animals;

(e) Whether Defendants refused to disclose the problems with the Products after it knew of their propensity to harm pets;

(f) Whether the propensity of the Products to harm pets constitutes a manufacturing or design defect;

(g) Whether Defendants' conduct constitutes a breach of warranties;

(h) Whether Defendants' conduct constitutes a breach of contract;

(i) Whether Class members have been injured by Defendants' conduct;

(j) Whether Class members have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing, and if so, what is that proper measure and appropriate formula to be applied in determining such damages and restitution, including the availability of emotional distress and medical monitoring damages; and

(k) Whether Class members are entitled to injunctive relief.

30. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel for the prosecution of class action litigation.

31. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

32. A class action will permit a large number of similarly situation persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. If a class or general public action is not permitted, many Class members will likely receive no remedy for damages suffered as a result of Menu Foods' misconduct.

33. Defendants have acted and refused to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I
## STRICT PRODUCTS LIABILITY

34. Plaintiff hereby incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of herself and all others similarly situated.

35. Defendants are strictly liable for supplying a product that is either defective in its manufacture by virtue of the introduction of melamine and/or other contaminants into the Product while under Defendants' control or, alternatively, defective in its design by virtue of the lack of safeguards necessary to ensure that toxins are not introduced into its pet food while under Defendants' control.

36. Defendants are also strictly liable for failure to warn the public of the known dangers and reasonably foreseeable harm that could result from use of the Product.

37. Plaintiff, a pet owner, is a reasonably foreseeable user of the Product, and purchased and used the product in a foreseeable manner by feeding the Product to pets. Plaintiff has been damaged, and has suffered losses including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress and the money spent on the Product itself.

## COUNT II

## NEGLIGENCE

38. Plaintiff incorporates all other allegations in the Complaint into this cause of action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of himself and all others similarly situated.

39. Defendants owed a duty to Plaintiff to ensure that its pet foods were not poisonous to pets in the manner of the Products.

40. Defendants breached their duty of care to Plaintiff by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and failing to take sufficient measure to prevent the Products from being offered for sale, sold, or fed to pets.

41. Res ipsa loquitur applies because Defendants had exclusive control of the relevant instrumentalities, including the Product and manufacturing facilities, melamine or other toxins would not normally be present, absent negligence.

42. Menu Foods' breaches of duty were the actual and proximate cause of damage to Plaintiff, including the loss of a pet, the expenditure of money for medical care and monitoring of pets, sever emotional distress and the money spent on the product itself.

## COUNT III

## BREACH OF WARRANTY

43. Plaintiff hereby incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of herself and all others similarly situated.

44. Defendants, by calling its product "food" and making other similarly enticing representations as set forth more fully above, impliedly and/or expressly warranted that the Products were ingestible and would not sicken and kill the dogs and cats that ate them. Menu Foods also warranted thereby, that its products were fit for the particular purpose of nourishing pets without sickening and killing said pets.

45. Defendants breached these warranties by virtue of the facts set forth in the body of the Complaint, and Plaintiff was damaged thereby, including the loss of a pet, the expenditure of money for medical care and monitoring of pets, severe emotional distress, and the money spent on the product itself.

## COUNT IV

## BREACH OF CONTRACT

46. Plaintiff hereby incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of herself and all others similarly situated.

47. The facts as set forth above also constitute the formation and breach of a contract between the Plaintiff and Defendants. Alternatively, Plaintiff was necessarily the third party beneficiary of a contract between Defendants and intermediaries from whom Plaintiff purchased the Products. Plaintiff was damaged by Defendant's breaches, as previously set forth.

## COUNT V

## VIOLATION OF THE PA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. Section 201-1 et seq)

48. Plaintiff hereby incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of herself and all others similarly situated.

49. The acts set forth above also constitute violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and Plaintiff has suffered damage thereby, including out of pocket loss and other pecuniary harm, as set forth above.

## COUNT VI
## UNJUST ENRICHMENT

50. Plaintiff hereby incorporates all other allegations in the Complaint into this Cause of Action, except such allegations as may be inconsistent herewith (which are plead in the alternative). Plaintiff alleges this cause of action on behalf of herself and all others similarly situated.

51 As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages. Defendants profited and benefited from the sale of Products, even as the Product cause Plaintiff to incur damages.

52. Defendants have accepted and retained these profits and benefits derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers were not receiving products of the quality, nature, fitness or value that had been represented by Defendants or that reasonable consumers expected. Plaintiff purchased pet food

that she expected would be safe and healthy for her cat and instead had had to endure the death of her pet.

53. By virtue of the conscious wrongdoing alleged here, Defendants have been unjustly enriched at the expense of Plaintiff. Plaintiff is entitled to, and seeks, the disgorgement and restitution of Defendants' wrongful profits, revenues, and benefits, to the extent and in the amount deemed appropriate by the Court. Plaintiff is also entitled to, and seeks such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

    A.    An order certifying the Class as defined above;

    B.    An aware of actual damages, restitution, and/or disgorgement from Defendants of the benefits conferred by Plaintiff and the Class;

    C.    Reimbursement of medical and other expenses;

    D.    Appropriate injunctive relief;

    E.    Appropriate statutory and punitive damages;

    F.    Pre- and post-judgment interest to the Class;

    G.    Reasonable attorney's fees and costs; and

    H.    Such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

    /s/ *J. Chad Moore*
J. Chad Moore, Esquire
PA76660
270 Market Street
Millersburg, PA  17061
Tel: 717-692-5533
Fax:  717-692-5111